# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| IN RE INOTIV STOCKHOLDER DERIVATIVE LITIGATION | Case No. 4:22-cv-00064-PPS-AZ<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT** |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND AND SETTLEMENT NEGOTIATIONS .................................. 3

A.    Factual Background and Summary of the Derivative Actions................................. 3

B.    Procedural History ............................................................................................... 5

    1.    The Federal Derivative Action............................................................... 5

        a.    The *Grobler* Action................................................................... 5

        b.    The *Burkhart* Action ................................................................ 5

    2.    The State Derivative Action................................................................... 6

        a.    The *Whitfield* Action ................................................................ 6

        b.    The *Castro* Action .................................................................... 7

C.    Mediation Efforts and Settlement Negotiations.................................................... 8

III.    THE SETTLEMENT'S TERMS ....................................................................... 9

IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL ........................11

    A.    Applicable Legal Standards.................................................................11

    B.    The Settlement Falls Within the Range of Possible Approval ..................... 13

        1.    The Strength of Plaintiffs' Claims Balanced Against the Substantial Benefit Provided by the Settlement ................................................................. 13

        2.    The Complexity, Expense, and Likely Duration of the Litigation........................ 17

        3.    The Proposed Settlement Is a Product of Arm's-Length Negotiations ................ 19

        4.    The Stage of the Proceedings and the Amount of Discovery Completed............ 20

        5.    The Opinion of Competent Counsel .................................................... 22

V.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED............................ 23

VI.    PROPOSED SCHEDULE ................................................................................. 25

VII.    CONCLUSION................................................................................................ 25

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**CASES**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  Nos. 07 CV 2898, 09 C 2026,
  2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................................................. 16

*Amans v. Tesla, Inc.*,
  No. 3:21-cv-03577-VC,
  2024 WL 1024735 (N.D. Cal. Mar. 8, 2024) ........................................................... 20

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
  616 F.2d 305 (7th Cir.1980) ................................................................................... 13

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ...................................................................................11

*Burkholder v. City of Ft. Wayne*,
  750 F. Supp. 2d 990 (N.D. Ind. 2010) .................................................................... 20

*Busch on Behalf of Richardson Elecs., Ltd. v. Richardson*,
  No. 2017-0868-AGB,
  2018 WL 5970776 (Del. Ch. Nov. 14, 2018) .......................................................... 15

*Bushansky v. Armacost*,
  No. 12–cv–01597–JST,
  2014 WL 2905143 (N.D. Cal. June 25, 2014) ......................................................... 25

*Carter v. Anderson Merchandisers, LP*,
  Nos. EDCV 08–00025–VAP (OPx), EDCV 09–0216–VAP (Opx),
  2010 WL 144067 (C.D. Cal. Jan. 7, 2010) .............................................................. 20

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ..................................................................... 14

*Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*,
  950 F.3d 984 (7th Cir. 2020) ......................................................................... *passim*

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) ................................................................................... 13

*Edwards v. Educ. Mgmt. Corp.*,
  No. 1:18-cv-03170-RLY-DLP,
  2022 WL 3213277 (S.D. Ind. June 13, 2022) ......................................................... 17

*Evans on behalf of United Dev. Funding IV v. Greenlaw*,
    No. 3:16-cv-635-M,
    2018 WL 2197780 (N.D. Tex. May 14, 2018) ......................................................... 24

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) ................................................................................. 11

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir.1982) ................................................................................. 22

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ................................................................................. 18

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) .......................................................................... 22

*Hu v. Baker*,
    No. 4:23-cv-02077-KAW,
    2025 WL 2419265 (N.D. Cal. Aug. 21, 2025) ....................................................... 24

*In re Abbott Labs. Deriv. S'holders Litig.*,
    325 F.3d 795 (7th Cir. 2003) ................................................................................. 15

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................... 20, 21

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................... 19

*In re Bromine Antitrust Litig.*,
    203 F.R.D. 403 (S.D. Ind. 2001) ........................................................................... 13

*In re Caremark Int'l Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996) ......................................................................... 17, 18

*In re Fab Universal Corp. S'holder Derivative Litig.*,
    148 F. Supp. 3d 277 (S.D.N.Y. 2015) ................................................................... 19

*In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*,
    No. 3:05-MD-527 RLM,
    2017 WL 2672767 (N.D. Ind. June 19, 2017) .................................................. 12, 16

*In re Immunitybio, Inc. S'holder Derivative Litig.*,
    No. 3:24-cv-02014-GPC-VET,
    2025 WL 2147066 (S.D. Cal. July 29, 2025) ......................................................... 14

*In re Lloyd's Am. Tr. Fund Litig.*,
   No. 96 Civ.1262 RWS,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002 ........................................................................ 18

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................................................... 18

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ..................................................................................................... 15

*In re Rambus Inc. Derivative Litig.*,
   No. C 06–3513 JF (HRL),
   2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ......................................................................... 25

*In re TikTok, Inc., Consumer Priv. Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................................................................... 25

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...................................................................................... 16, 17, 18

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ..................................................................................................................... 15

*Lace v. Fortis Plastics LLC*,
   Nos. 3:12–CV–363 JD, 3:12–CV–364 JD,
   2015 WL 1383806 (N.D. Ind. Mar. 24, 2015) ..................................................................... 19

*McCue v. MB Fin., Inc.*,
   No. 1:15–cv–00988,
   2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) .......................................................................... 13

*Probst v. Eli Lilly & Co.*,
   No. 1:22-cv-01986-MKK-SEB,
   2023 WL 11051728 (S.D. Ind. Nov. 21, 2023) ..................................................................... 16

*Se. Pennsylvania Transp. Auth. V. Orrstown Fin. Servs., Inc.*,
   No. 1:12-cv-00993,
   2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) .......................................................................... 20

*Sheffler v. Activate Healthcare, LLC*,
   No. 1:23-cv-01206-SEB-TAB,
   2024 WL 4008289 (S.D. Ind. Aug. 30, 2024) ....................................................................... 17

*Susquehanna Corp. v. Korholz*,
   84 F.R.D. 316 (N.D. Ill. 1979) ...................................................................................... *passim*

iv

*United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg,*
    262 A.3d 1034 (Del. 2021) ................................................................................... 15

*United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.,*
    447 F.2d 647 (7th Cir. 1971) ................................................................................ 12

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ................................................................................ 22

## STATUTES, RULES AND OTHER AUTHORITIES

15 U.S.C. §§ 78j(b) ................................................................................................. 1

Fed. R. Civ. P. 23.1 ......................................................................................... *passim*

Manual for Complex Litigation (Fourth) §13.14 (4th ed. 2004) ................................ 12

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, plaintiffs Sergio Grobler ("Grobler") and William Noble Burkart ("Burkart") (together, the "Federal Derivative Plaintiffs"), derivatively on behalf of Inotiv, Inc. ("Inotiv" or the "Company"), respectfully submit this brief in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement in the above-captioned consolidated derivative action ("Federal Derivative Action").[1]

## I.    INTRODUCTION[2]

The Derivative Actions assert causes of action for breach of fiduciary duties, violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78n(a), contribution for violations of Sections 10(b) and 21D of the Exchange Act, aiding and abetting breach of fiduciary duty, waste of corporate assets, and unjust enrichment against defendants Robert W. Leasure, Jr. ("Leasure"), Beth A. Taylor ("Taylor"), Carmen Wilbourn, Gregory C. Davis ("Davis"), Richard A. Johnson ("Johnson"), Dr. John E. Sagartz ("Sagartz"), R. Matthew Neff ("Neff"), Nigel Brown, and Scott Cragg ("Cragg") (together, the "Individual Defendants"), and nominal defendant Inotiv (together with the Individual Defendants, the "Defendants," and together with Plaintiffs and the Individual Defendants, the "Parties").

The Settlement is the culmination of hard-fought, arm's-length negotiations by experienced and well-informed counsel, facilitated by Robert A. Meyer, Esq. of JAMS ("Mr. Meyer" or the "Mediator"), a highly experienced and well-respected mediator in shareholder and securities litigation.

---

[1] The Settlement also resolves derivative claims in the related shareholder derivative action captioned *In re Inotiv, Inc. Shareholder Derivative Litigation*, Cause No. 79C01-2304-PL-000048 (Tippecanoe County Circuit Court) (the "State Derivative Action," and together with the Federal Derivative Action, the "Derivative Actions"). Federal Derivative Plaintiffs, together with plaintiffs in the State Derivative Action ("State Derivative Plaintiffs"), are referred to collectively herein as "Plaintiffs."

[2] Unless noted otherwise, all capitalized terms used herein shall have the same meaning as set forth in the Stipulation of Settlement dated December 18, 2025 (the "Stipulation" or "Stip."), which is being submitted concurrently herewith.

Pursuant to the terms of the Settlement, Inotiv shall adopt and implement certain corporate governance measures (the "Corporate Governance Measures" or the "Measures") designed to prevent the recurrence of the misconduct alleged in the Derivative Actions for a period of no less than five years from the Effective Date of Settlement. Further, Inotiv acknowledges through a unanimous resolution of the Special Litigation Committee ("SLC") of its Board of Directors ("Board") that the Measures in Exhibit A to the Stipulation "confer substantial corporate benefits upon Inotiv and its stockholders and are in all respects, fair and reasonable and in the best interests of the Company and its stockholders." Stip., §V.2, 3. Further, the SLC of the Board acknowledges that the pendency, prosecution, and settlement of the Derivative Actions and the litigation efforts of Plaintiffs and Plaintiffs' Counsel were a material and substantial cause of Corporate Governance Measures the Company implemented prior to reaching an agreement in principle, but after the Commencement of the Derivative Actions, as detailed in Exhibit A to the Stipulation. Stip., §V.2, 5. The Company further acknowledges and agrees, through a unanimous resolution of the SLC of the Board, that the initiation and prosecution of the Derivative Actions and the litigation efforts of Plaintiffs and Plaintiffs' Counsel were a material and substantial cause of the Company's ability to resolve the related Securities Class Action within insurance policy limits and without any direct monetary contribution from the Company. Stip., §V.2, 4. Finally, as part of the Settlement, the Individual Defendants shall cause their insurers to pay $2,490,000.00 to Inotiv (the "Settlement Amount"). This amount to be paid by the Company's insurers is greater than the mediated and agreed-to Fee and Expense Amount for Plaintiffs' Counsel, thereby relieving Inotiv of any obligation to pay attorneys' fees directly from its operating business. The Settlement also includes the Parties' agreement for payment of Service Awards for Plaintiffs from the Fee and Expense Amount, subject to Court approval. Stip., §V.4.1, 4.6. At the preliminary approval stage, the Court

need not decide whether to approve the agreed-upon Fee and Expense Amount.  At final approval, Plaintiffs will provide additional detail and support for this request.

Also, at the preliminary approval stage, the Court need only conclude that the proposed Settlement is within the range of resolutions that might ultimately be found to be fair, reasonable, and adequate such that notice of the Settlement should be provided to Current Inotiv Stockholders, and that a final hearing should be scheduled to determine whether to approve the Settlement.

Plaintiffs respectfully submit that the Settlement terms readily satisfy this standard and request that the Court enter an order: (i) preliminarily approving the Settlement, (ii) approving the form of, and method for providing, notice to Current Inotiv Stockholders; and (iii) scheduling the Settlement Hearing.  Defendants do not oppose this motion or any of the requested relief.

## II.    BACKGROUND AND SETTLEMENT NEGOTIATIONS

### A.    Factual Background and Summary of the Derivative Actions

Inotiv, together with its subsidiaries, operates as a contract research organization specializing in nonclinical and analytical drug delivery and development services.  ¶¶1, 27.[3]  The Company also manufactures scientific instruments for life sciences research that are sold to pharmaceutical companies, universities, government research centers, and medical research institutions.  ¶27.  Inotiv maintains facilities in the United States, United Kingdom, Europe, and Israel.  *Id*.  On November 5, 2021, Inotiv acquired Envigo RMS Holding Corp. ("Envigo") for $271 million, expanding the Company's operations to include breeding, importing and selling research-quality animal models for use in laboratory tests, manufacturing and distributing standard and custom diets, distributing bedding and enrichment products, and providing other services

---

[3] Citations to "¶ _" refer to the Federal Derivative Plaintiffs' Verified Consolidated Amended Stockholder Derivative Complaint ("Consolidated Complaint") filed on June 24, 2024.  ECF No. 37.

associated with these products.  ¶¶1, 28.  Envigo has facilities throughout the country, including one in Cumberland, Virginia (the "Cumberland Facility").  *Id*.

Envigo is subject to state and federal rules and regulations concerning the treatment of animals, specifically the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131–2156.  The AWA "requires that minimum standards of care and treatment be provided for certain animals bred for commercial sale; used in research, teaching, or testing; transported commercially; or exhibited to the public."  ¶29.

Inotiv's acquisition of Envigo was purportedly supported by extensive due diligence, including site visits.  ¶2.  However, unbeknownst to stockholders, over a nearly 10-month period prior to the Envigo acquisition and while this due diligence was being conducted, the U.S. Department of Agriculture ("USDA") conducted five inspections of the Cumberland Facility and uncovered pervasive violations of the AWA and issued directives to Envigo to remediate them, which the Individual Defendants failed to correct.  ¶¶2, 33.

On May 20, 2022, after the market closed, Inotiv disclosed that the U.S. Department of Justice ("DOJ") filed a complaint against Envigo alleging violations of the AWA, after the DOJ had executed a search and seizure warrant at the Cumberland Facility.  ¶¶3, 95.  The next day, on May 21, 2022, Judge Norman K. Moon of the United States District Court for the Western District of Virginia issued an Amended Temporary Restraining Order.  ¶¶3, 96.

in the action captioned *United States of America v. Envigo RMS, LLC*, Case No. 6:22-cv-00028-NKM (W.D. Va.) (the "*Envigo* Action"), citing the "overwhelming evidence" provided by the DOJ, and finding that "Envigo has consistently failed, despite repeated warnings and opportunities for correction, to meet its obligations under AWA's implementing regulations to

provide adequate veterinary care." ¶¶3, 96, 97. On this news, the Company's share price fell $5.19, or 28%, to close at $13.14 per share on May 23, 2022. ¶¶3, 100.

Plaintiffs allege, *inter alia*, that the Individual Defendants breached their fiduciary duties owed to Inotiv and its shareholders by failing to disclose that Envigo's Cumberland Facility posed significant regulatory and legal compliance risks under the AWA for its inhumane treatment of animals. ¶¶155–60. Additionally, Plaintiffs assert claims for Contribution for Violations of Sections 10(b) and 21D of the Exchange Act against Defendants Leasure and Taylor, and Violations of Section 14(a) of the Exchange Act against Defendants Leasure, Davis, Johnson, Sagartz, Neff, and Cragg. ¶¶161–72.

**B.    Procedural History**

**1.    The Federal Derivative Action**

**a.    The *Grobler* Action**

On September 9, 2022, Plaintiff Grobler initiated an action alleging derivative claims on behalf of Inotiv against the Individual Defendants in this Court, captioned *Grobler v. Leasure et al*, Docket No. 4:22-cv-00064 (N.D. Ind.) (the "*Grobler* Action"). Plaintiff Grobler did not make a pre-suit litigation demand on the Board. The *Grobler* Action brought claims for breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, and violations of Section 14(a) of Exchange Act.

**b.    The *Burkhart* Action**

On January 4, 2023, Plaintiff Burkart filed a substantially similar complaint alleging derivative claims on behalf of Inotiv against the Individual Defendants in this Court, captioned *Burkhart v. Leasure et al,* Docket No. 4:23-cv-00003 (N.D. Ind.) (the "*Burkhart* Action"). Plaintiff Burkhart did not make a pre-suit litigation demand on Inotiv's Board. Like the *Grobler* Action,

the *Burkhart* Action asserted claims for breaches of fiduciary duty, violations of Section 14(a) of the Exchange Act, and contribution for violations of Section 10(b) and 21D of the Exchange Act.

On April 25, 2024, the Court consolidated the *Grobler* Action and the *Burkhart* Action into the Federal Derivative Action under the caption *In re Inotiv Stockholder Derivative Litigation*, Lead Case No. 4:22-cv-00064-PPS-AZ (N.D. Ind.). Also on that date, The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP were appointed as Co-Lead Counsel, and Williams Law Group, LLC was appointed as Liaison Counsel. The Federal Derivative Action was twice stayed pending the outcome of certain proceedings in the related securities class action captioned *In re Inotiv, Inc. Securities Litigation*, Cause No. 4:22-cv-045-PPS-JEM (N.D. Ind.) (the "Securities Class Action").

Plaintiffs Grobler and Burkhart filed the Consolidated Complaint on June 24, 2024, asserting causes of action for breach of fiduciary duty and violations of Sections 10(b) and 14(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78n(a).

During the pendency of the stay, Plaintiffs Grobler and Burkhart received and conducted a targeted review of over 60,000 documents produced in the Securities Class Action (the "Document Production"), which were produced to Plaintiffs Grobler and Burkhart as part of the stay agreement entered into in connection with the Federal Derivative Action.

### 2.    The State Derivative Action

#### a.    The *Whitfield* Action

On January 20, 2023, Matthew Whitfield ("Whitfield") served the Inotiv Board with a litigation demand, which demanded, among other things, that the Board investigate, take remedial action, and initiate suit against certain of the Company's current and former officers and directors

for alleged breaches of fiduciary duties and other violations of law.  The Board confirmed receipt of Whitfield's demand on January 25, 2023.

On April 17, 2023, Whitfield filed his action alleging derivative claims on behalf of Inotiv in Tippecanoe Circuit Court.  That case is captioned *Matthew Whitfield v. Nigel Brown et al.,* Cause No. 79C01-2304-PL-000048 (the "*Whitfield* Action").  The *Whitfield* Action alleges claims for breach of fiduciary duty, aiding and abetting thereof, and waste of corporate assets.

The *Whitfield* Action was also subsequently stayed by agreement dated June 20, 2023.

b.    **The *Castro* Action**

On January 23, 2023, Michael Castro ("Castro") sent the Inotiv Board a substantially similar litigation demand to Whitfield's, which demanded, among other things, that the Board investigate, take remedial action, and initiate suit against certain of the Company's current and former officers and directors for breaches of fiduciary duties and other violations of law.  The Board confirmed receipt of Castro's demand on January 25, 2023.

On June 2, 2023, Castro filed his action alleging derivative claims on behalf of Inotiv in the Marion Superior Court.  That case is captioned *Michael Castro v. Robert W. Leasure et al.*, Case No. 49D01-2306-PL-022213 (the "*Castro* Action") and asserts claims for breaches of fiduciary duty, corporate waste, and unjust enrichment.

On August 23, 2023, the parties to the *Castro* Action jointly moved to transfer the *Castro* Action to Tippecanoe Circuit Court and to consolidate the *Castro* Action with the *Whitfield* Action in Tippecanoe Circuit Court.  Following transfer of the *Castro* Action to Tippecanoe Circuit Court, the Tippecanoe Circuit Court consolidated the *Whitfield* and *Castro* Actions under the caption *In re Inotiv, Inc. Shareholder Derivative Litigation*, Cause No. 79C01-2304-PL-000048 (Tippecanoe County Circuit Court) (the "State Derivative Action").

On August 24, 2023, the law firms of Johnson Fistel, PLLP and Rigrodsky Law, P.A. were appointed as Co-Lead Counsel and Parr Richey Frandersen Patterson Kruse, LLP and Shartzer Law Firm, LLC were appointed as Co-Liaison Counsel. The parties to the State Derivative Action twice agreed to a stay pending the outcome of certain proceedings in the Securities Class Action. In connection with the stay agreement pending as of the date of this Stipulation, Castro and Whitfield received and conducted a targeted review of the Document Production.

**C.    Mediation Efforts and Settlement Negotiations**

In or around November 2024, the Settling Parties, as well as the parties to the related Securities Class Action, agreed to explore a potential resolution of the Derivative Actions and the Securities Class Action before the Mediator. On February 24, 2025, counsel for the Settling Parties attended an in-person, all-day mediation with Mr. Meyer in New York, New York in an attempt to reach a settlement. The mediation involved an extended effort to settle the claims and was preceded by the exchange of information by the Settling Parties, including Plaintiffs' submission of an extensive settlement demand and a detailed mediation statement that referenced documents Defendants previously produced. While the mediation was productive, the Settling Parties were unable to reach an agreement at mediation.

For several months thereafter, the Settling Parties continued to engage in settlement communications under the guidance of, and facilitated by, the Mediator.

As a result of the mediation and subsequent arm's-length settlement negotiations overseen by the Mediator, on September 25, 2025, the Settling Parties executed the Term Sheet articulating terms that, subject to approval of the Court, resolves the Derivative Actions and the Released Claims as further described in the Stipulation dated December 18, 2025.

### III.    THE SETTLEMENT'S TERMS

As fully detailed in Exhibit A to the Stipulation, as consideration for the Settlement: (i) Inotiv will institute the Corporate Governance Measures designed to prevent the recurrence of the misconduct alleged in the Derivative Actions; (ii) its insurers will make a payment of $2.49 million to the Company; and (iii) Inotiv was able to resolve the Securities Class Action within insurance policy limits, without a direct monetary contribution from the Company.   The Settlement consideration, summarized below, provides Inotiv and its shareholders the benefit of substantial, immediate, and lasting improvements to the Company's corporate governance practices.

Formal Resolution Separating Chief Executive Officer and Chairperson Functions

In order to bolster the Board's independence, the Board will pass a formal resolution ensuring separation between the Chief Executive Officer and Chairperson functions.   This will enable the Board to better exercise independent oversight without potential conflicts or extraneous considerations, and align the priorities of the Board members.

Institute an M&A Playbook

The Derivative Actions allege that prior to acquiring Envigo, Inotiv's due diligence of Envigo was inadequate causing substantial harm to the Company and its shareholders.   To eliminate similar situations in the future, Inotiv will adopt a mergers and acquisitions playbook that will describe, among other things, the due diligence procedures Inotiv will follow with regard to future mergers and acquisitions.

Creation of a Disclosure Committee

The Derivative Actions allege that Inotiv's public disclosures were false and misleading, causing harm to the Company.   To strengthen the integrity of its statements to the public and investors, Inotiv will create a Disclosure Committee that will establish protocols designed to

ensure that Inotiv's significant financial statements, including those contained in SEC filings and material press releases, are reviewed for accuracy, timeliness, and completeness. The newly created Disclosure Committee will oversee the issuance of all material, public-facing disclosures relating to Inotiv's compliance with the DOJ monitorship.

<u>Credit for Previously Implemented Measures: Revisions of the Nominating and Corporate Governance Committee Charter; and Changes to the Board Composition and Management</u>

During the pendency of the Derivative Actions, Inotiv implemented several governance measures that the SLC of the Board acknowledges were substantially caused by the pendency, prosecution, and settlement of the Derivative Actions and the litigation efforts of Plaintiffs and Plaintiffs' Counsel. These include revisions to the Charter of the Nominating and Corporate Governance Committee, particularly with respect to oversight of the Company's programs including: (a) the Company's ethical compliance programs; (b) Inotiv's compliance with legal and regulatory requirements (other than matters regarding financial compliance); (c) the review of correspondence with regulators and governmental agencies concerning the Company's compliance with legal and regulatory requirements related to the Company's business activities; and (d) discussion with advisors regarding matters that may have a material impact on the Company's non-financial compliance policies and procedures.

Further, during the pendency of the Derivative Actions, the composition of Inotiv's Board changed with the addition of directors Terry Coelho, Mike Harrington, and David Landman. Inotiv also added new management personnel including Andrea Castetter (Executive Vice President - General Counsel, Corporate Secretary and Chief Compliance Officer), Brennan Freeman (Vice President – Finance & Corporate Controller), and Jeff Krupp (Chief Human Resources Officer).

<u>Resolution of the Securities Class Action Within Insurance Policy Limits</u>

The $8,750,000 settlement of the related Securities Class Action has been preliminarily

approved.  Due to the Derivative Actions and Plaintiffs' and their counsel's efforts, Inotiv did not

have to pay out-of-pocket to resolve the Securities Class Action which was a real risk.  Inotiv and

the SLC of the Board recognize that "[t]he initiation and prosecution of the Derivative Actions and

the litigation efforts of Plaintiffs and Plaintiffs' Counsel were a material and substantial cause of

… the Securities Class Action settlement being resolved within insurance policy without any direct

monetary contribution from the Company."  Stip., Ex. A.

        <u>$2.49 Million Settlement Amount</u>

        Inotiv's insurers will make a payment to the Company of $2.49 million.  Inotiv may use

this cash payment for any business purposes as it best sees fit.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL[4]

### A.    Applicable Legal Standards

        Public policy strongly favors settlement as a method for resolving complex shareholder

litigation.  This is especially true in complex shareholder actions such as this, as "[s]ettlement of

the complex disputes . . . minimizes the litigation expenses of both parties and also reduces the

strain such litigation imposes upon already scarce judicial resources."  *Armstrong v. Bd. of Sch.*

*Dirs.,* 616 F.2d 305, 313 (7th Cir. 1980), *rev'd on other grounds*, *Felzen v. Andreas*, 134 F.3d 873

(7th Cir. 1998).

        A derivative action "may be settled . . . only with the court's approval.  Notice of a proposed

settlement, voluntary dismissal, or compromise must be given to shareholders or members in the

manner that the court orders." Fed. R. Civ. P. 23.1(c). Court approval of a derivative settlement

involves two steps: (1) determining whether the proposed Settlement appears to fall within the

range of possible approval such that notice of the settlement should be provided to stockholders,

---

[4] Unless otherwise noted, all internal citations and quotation marks herein are omitted and all emphasis is supplied.

referred to as preliminary approval; and (2) after such notice has been provided, holding a fairness hearing to determine whether the settlement is fair, reasonable, and adequate, referred to as final approval. *See* Manual for Complex Litigation (Fourth) §13.14 (4th ed. 2004) (setting forth the approval procedure for settlement of a shareholder derivative action).

In determining whether to approve a proposed derivative settlement, the Court should "weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interest of the corporation and all its shareholders." *United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971); *Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*, 950 F.3d 984, 988 (7th Cir. 2020). The following factors may inform the Court during the final approval stage: (1) the strength of the plaintiff's case on the merits, balanced against the benefits of the settlement; (2) the complexity, length, and expense of continued litigation; (3) whether the settlement negotiations involved collusion; (4) the opinion of knowledgeable counsel; and (5) the stage of the proceedings, including the amount of discovery completed. *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 319–20 (N.D. Ill. 1979); *see also In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, No. 3:05-MD-527 RLM, 2017 WL 2672767, at *2 (N.D. Ind. June 19, 2017) (in determining whether a proposed settlement is fair, reasonable, and adequate, the court considers several circumstantial factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed. . . . Of those, the first is the most important.").

The Court will have before it detailed papers submitted in support of the Settlement at the final settlement hearing so that it may finally determine whether the Settlement is fair, reasonable, and adequate and in the best interest of those whose claims will be extinguished. *See Korholz*, 84 F.R.D. 316 at 318–19. Here, Plaintiffs seek only preliminary approval of the proposed Settlement and the Court's permission to notify Inotiv's stockholders of the Settlement's terms. At the preliminary approval stage, the Court need only assess "whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir.1980); *see also McCue v. MB Fin., Inc.*, No. 1:15–cv–00988, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015). Also at preliminary approval, "[t]he district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Notably, the threshold for preliminary approval is low. *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). The Settlement here easily meets this standard.

### B.    The Settlement Falls Within the Range of Possible Approval

The proposed Settlement is well within the range of possible approval. The Settlement was negotiated at arm's-length by experienced and fully informed counsel and provides substantial benefits to Inotiv and its stockholders, particularly in light of the risks, complexity and duration of continued litigation. Therefore, consideration of the relevant legal factors supports that the proposed Settlement is fair, reasonable, and adequate.

### 1.    The Strength of Plaintiffs' Claims Balanced Against the Substantial Benefit Provided by the Settlement

Upon approval of the proposed Settlement, Inotiv shall adopt and implement the Measures designed to prevent the recurrence of the misconduct alleged in the Derivative Actions for a period of no less than five years from the Effective Date of Settlement. *See Cohn v. Nelson*, 375 F. Supp.

2d 844, 850 (E.D. Mo. 2005) (finding a three-year commitment to reforms will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past"); *In re Immunitybio, Inc. S'holder Derivative Litig.*, No. 3:24-cv-02014-GPC-VET, 2025 WL 2147066, at *6 (S.D. Cal. July 29, 2025) ("The Court agrees that the multi-year implementation period would be beneficial to the company."). The Measures will provide immediate and long-lasting benefits to Inotiv. They specifically address the internal control and governance deficiencies that Plaintiffs allege caused and/or enabled the wrongdoing alleged in in the Derivative Actions, thereby reducing the likelihood that the alleged misconduct will recur in the future. Inotiv further acknowledges and agrees, through a unanimous resolution of the SLC of the Board, that the initiation and prosecution of the Derivative Actions and the litigation efforts of Plaintiffs and Plaintiffs' Counsel were a material and substantial cause of the Company's ability to resolve the related Securities Class Action within insurance policy limits and without any direct monetary contribution from the Company. Stip., §V.2, 4. Finally, as part of the Settlement, the Individual Defendants shall cause their insurers to pay the Settlement Amount of $2,490,000.00 to Inotiv. Stip., §V.2, 5.

This material therapeutic and monetary recovery that the Settlement provides Inotiv is strong evidence that the Settlement is within the range of possible approval and should be granted preliminary approval. The Corporate Governance Measures are valuable consideration. *See Dorvit*, 950 F.3d at 992 (finding that the proposed corporate governance reforms are "substantive and meaningful: they mandate an increased frequency of activity, meetings, and reporting among the company's audit committee, its audit team, outside auditors, and senior leadership. Further, they increase transparency regarding [the company's] board of directors, create a claw-back policy, and enhance the visibility of its whistleblowing mechanisms. It was not an abuse of discretion to approve these measures."). Likewise, the Settlement Amount is valuable consideration for the

14

release of derivative claims and well within the range of reasonability, especially considering the potential risks to securing any relief.

While Plaintiffs believe that their claims are meritorious, establishing liability was not a foregone conclusion.  As fiduciaries of the Company and its stockholders, Plaintiffs and their counsel were obligated to weigh their belief in the strength of their claims against the reality that "the odds of winning [a] derivative lawsuit [are] extremely small."  *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Plaintiffs acknowledge the risk that the Derivative Actions would not have withstood the Defendants' anticipated motions to dismiss, especially given the heightened pleading requirements under Fed. R. Civ. P. 23.1.  *See, e.g.*, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (satisfied under "extraordinary conditions"); *see also In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003) ("[D]emand can only be excused where facts are alleged with particularity which create a reasonable doubt that the directors' action was entitled to the protections of the business judgment rule").  Demand is excused only where the complaint alleges with particularity that a majority of board is conflicted due to: (i) having received a material personal benefit from the alleged misconduct; (ii) facing a substantial likelihood of liability; or (iii) lacking independence from a conflicted director.  *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034 (Del. 2021).  Further, the State Derivative Plaintiffs acknowledge significant challenges in proving wrongful refusal of their demands.  *See, e.g.*, *Busch on Behalf of Richardson Elecs., Ltd. v. Richardson*, No. 2017-0868-AGB, 2018 WL 5970776, at *8 (Del. Ch. Nov. 14, 2018) ("[B]ecause a stockholder plaintiff who makes a demand 'concedes that the board had the requisite independence and disinterest to evaluate the demand objectively,' the 'decision to refuse a plaintiff's demand is afforded the protection of the business judgment rule unless the

15

plaintiff alleges particularized facts that raise a reasonable doubt as to whether the board's decision to refuse the demand was the product of valid business judgment.'").

Even if Plaintiffs were to overcome this procedural hurdle, "continuation of the litigation would require the resolution of many difficult and complex issues, would entail considerable additional expense, and would likely involve weeks, perhaps months, of trial time." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Because the derivative claims allege the issuance of misleading statements, and oversight claims require bad faith, the Individual Defendants would continue to make factual arguments regarding whether they acted with the state of mind necessary to sustain Plaintiffs' claims.

When balanced against "the uncertain and unknowable benefits of litigation, the benefits of this settlement agreement to [Inotiv and its stockholders] are significant." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727, at *5 (N.D. Ill. Feb. 28, 2012); *see also Probst v. Eli Lilly & Co.*, No. 1:22-cv-01986-MKK-SEB, 2023 WL 11051728, at *4 (S.D. Ind. Nov. 21, 2023) (noting the success of any of defendants' multiple defenses of both fact and law "would leave [p]laintiffs without any recovery," and "even if [d]efendants did not prevail, a resolution on the merits in favor of [p]laintiffs would take years. [The settlement], paid out soon and with certainty, is a reasonable settlement compared to the alternative of years of further litigation and appeal for an uncertain chance at success."); *In re FedEx Ground Package Sys., Inc.*, 2017 WL 2672767, at *4 ("Every settlement is a compromise, but this settlement achieves an exceptional percentage of what the plaintiffs might have won had the case ever reached trial. In the absence of settlement, the best case scenario for the class is probably complex, would very likely take many more years, and is certain to be expensive—perhaps more than what has been incurred to get to this point.").

The valuable consideration of the Settlement—including the Corporate Governance Measures, the Company's acknowledgement that the Derivative Actions were a material and substantial cause of the Company's ability to resolve the Securities Class Action within insurance policy limits, and the substantial Settlement Amount, described *infra*—confers tangible, meaningful benefits to Inotiv and its stockholders, especially in light of the risks of no or, at best, delayed recovery for the Company if the litigation continued.  Therefore, the Settlement, when balanced against the uncertain prospects for prevailing at trial, is decidedly adequate and fair and reasonable to all concerned, and weighs in favor of granting preliminary approval.  *See In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996); *Dorvit*, 950 F.3d at 988; *Edwards v. Educ. Mgmt. Corp.*, No. 1:18-cv-03170-RLY-DLP, 2022 WL 3213277, at *5 (S.D. Ind. June 13, 2022) (granting preliminary approval, stating that "even if [p]laintiffs were to prevail on the merits and obtain a larger damages award, 'a future victory is not as valuable as a present victory'" and "[t]he costs of litigation and the need for many [p]laintiffs to receive payment expeditiously . . . indicates that the settlement offer is fair compared to the strength of the [p]laintiffs' case."); *Sheffler v. Activate Healthcare, LLC*, No. 1:23-cv-01206-SEB-TAB, 2024 WL 4008289, at *7 (S.D. Ind. Aug. 30, 2024) (Concluding that "the strength of [p]laintiff's case demonstrates the fairness, reasonableness, and adequacy of the proposed [s]ettlement [a]greement" and that "[c]ontinued litigation would almost certainly pose significant risks and costs on [plaintiff]—the most significant risk being the possibility that he would not prevail.").

### 2.      The Complexity, Expense, and Likely Duration of the Litigation

The Plaintiffs acknowledge that the Defendants would continue to vigorously contest the claims asserted and recognize the risk inherent in all litigation, especially in complex actions such as the Derivative Actions, as well as the difficulties and delays inherent in such litigation.  *See* Stip., §II; *see also Isby*, 75 F.3d at 1199–1200 ("[C]ontinuation of the litigation would require the

17

resolution of many difficult and complex issues, would entail considerable additional expense, and would likely involve weeks, perhaps months, of trial time.")  Therefore, the settlement represented "an outcome at least comparable, if not far superior, to that which plaintiffs might achieve by proceeding to trial."  *Id*.; *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) ("Defendants are highly motivated to defend these cases vigorously. . . . [C]ontinued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time").  Plaintiffs and Plaintiffs' Counsel are also mindful of the inherent problems of proof of, and defenses to, the claims asserted in the Derivative Actions.  *See* Stip., §II.  Shareholder derivative actions are notoriously complicated, and the Derivative Actions, which involve alleged claims dating back years, would have been no exception.  *See Caremark Int'l Inc.,* 698 A.2d at 967; *see also Dorvit*, 950 F.3d at 988.

Establishing damages and loss causation would be unpredictable and involve a battle of experts.  Even if Plaintiffs prevailed on the claims and established liability, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation.  *See In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) (establishing recoverable damages is a "complicated and uncertain process, typically involving conflicting expert opinions," to which "[t]he reaction of a jury . . . is highly unpredictable."); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation).  Numerous complexities could confound Plaintiffs' attempts to collect on any judgment after establishing liability.  For example, the Individual Defendants would likely claim that the Company was required to indemnify them for any damages.  The Company, in turn, is in a precarious financial state and its ability to indemnify the Individual Defendants is in question.  Due to these factors,

18

attempts to collect a judgment from the Individual Defendants could result in protracted and lengthy additional litigation.

The Settlement eliminates these risks and the other uncertainties of continued litigation, including the very real risk of no recovery after years of litigation, while ensuring that Inotiv receives the immediate benefits of the Corporate Governance Measures, resolving the Securities Class Action within insurance policy limits, and the Settlement Amount of $2.49 million. Therefore, this factor supports preliminary approval.

### 3. The Proposed Settlement Is a Product of Arm's-Length Negotiations

In determining the fairness of a proposed settlement, courts consider whether the settlement was the product of good faith bargaining at arm's-length without collusion. *Susquehanna*, 84 F.R.D. at 319–20. Here, the terms of the Settlement were only agreed upon after arm's-length negotiations over several months, by counsel with extensive experience in derivative and securities litigation, with the extensive assistance of the Mediator. *See* Stip., §I, C. Where a "[s]ettlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex . . . litigation, the [s]ettlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000). A mediator's involvement in settlement supports the notion that a settlement was negotiated at arm's-length and is therefore fair and reasonable. *See Lace v. Fortis Plastics LLC*, Nos. 3:12–CV–363 JD, 3:12–CV–364 JD, 2015 WL 1383806, at *3 (N.D. Ind. Mar. 24, 2015) (granting preliminary approval and noting that the "[s]ettlement [a]greement appears to be the product of earnest, informed, arm's length, and non-collusive negotiations; it has no obvious deficiencies"); *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) ("The [p]roposed [s]ettlement was the product of extensive formal mediation aided by a neutral JAMs mediator, hallmarks of a non-collusive, arm's-length settlement process."); *see also Burkholder v. City of Ft. Wayne*, 750 F.

Supp. 2d 990, 995 (N.D. Ind. 2010) (citing *Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08–00025–VAP (OPx), EDCV 09–0216–VAP (Opx), 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010)) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").   Further, courts have consistently recognized that Mr. Meyer's experience as a mediator in complex actions supports settlement approval.   *See e.g.*, *Amans v. Tesla, Inc.*, No. 3:21-cv-03577-VC, 2024 WL 1024735, at *3 (N.D. Cal. Mar. 8, 2024) ("The [s]ettlement was negotiated at arm's-length, with both [p]arties represented by experienced counsel, and with the assistance of a neutral third-party mediator, JAMS mediator Robert A. Meyer."); *Se. Pennsylvania Transp. Auth. V. Orrstown Fin. Servs., Inc.*, No. 1:12-cv-00993, 2023 WL 1454371, at *10 (M.D. Pa. Feb. 1, 2023) (Mr. Meyer serving as mediator and a settlement as a result of his proposal "demonstrates that the settlement reached between the parties resulted from an extensive good faith, arm's length negotiation.").   Thus, this factor supports preliminary approval.

### 4.    The Stage of the Proceedings and the Amount of Discovery Completed

The relevant inquiry under this factor is whether the parties have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). Here, Plaintiffs and their counsel obtained sufficient information about the facts underlying the claims to evaluate the proposed Settlement, by, among other things:

(i)     reviewing Inotiv's press releases and recorded or transcribed public statements in connection with quarterly earnings releases, year-end results, annual shareholder meetings, and other meetings and communications with investors and analysts;

(ii)    reviewing Inotiv's regulatory filings, including filings with the SEC;

(iii)   reviewing news and business media reports about Inotiv;

(iv)    reviewing investment and securities analysts' reports and advisories;

(v)    researching the applicable law with respect to the claims alleged in the Derivative Actions and the potential defenses thereto;

(vi)    preparing and filing multiple complaints in the Derivative Actions;

(vii)    reviewing and analyzing relevant pleadings in the Securities Class Action and the *Envigo* Action, and evaluating the merits of, and Defendants' liability in connection with, the Securities Class Action and the Derivative Actions;

(viii)    reviewing and evaluating internal Inotiv documents, including a targeted review and evaluation of the Document Production, consisting of over 60,000 documents produced in the related Securities Class Action obtained by Plaintiffs by agreement;

(ix)    participating in extensive settlement discussions with Defendants' Counsel, including an in-person mediation in New York City, as well as continued settlement communications under the guidance of, and facilitated by, the Mediator for several months during which confidential information about the Company was provided to Plaintiffs' Counsel; and

(x)    negotiating the terms of the Stipulation. *See* Consolidated Complaint, Introduction; Stip., §II.

The accumulation of information discovered through those efforts permitted Plaintiffs' Counsel to be well-informed in evaluating the risks of continued litigation and to have sufficient information to support the decision regarding the fairness, adequacy, and reasonableness of the Settlement. Plaintiffs and Plaintiffs' Counsel were well informed and fully appreciate the merits of the case, and therefore this factor supports preliminary approval. *AT&T*, 789 F. Supp. 2d at 966.

### 5.    The Opinion of Competent Counsel

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement.  *See Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir.1982) (courts are "entitled to rely heavily on the opinion of competent counsel"); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (counsel accepting mediator's proposal were highly experienced and weighed in favor of affirming district court's approval of securities settlement).

Here, counsel for the Parties were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses and support the Settlement.  *See* Stip., §V.8.2. Counsel for all Parties drew upon their experience in shareholder derivative litigation to evaluate the Derivative Actions and the Settlement.  The Settlement was reached only after extensive arm's-length negotiations with a firm understanding of the factual and legal issues presented and the relative strengths and weaknesses of their respective claims and defenses, as described above, the assessments of counsel for the Parties are entitled to great deference.  *Accretive*, 773 F.3d at 864; *see also Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) *(In re Harnischfeger Indus., Inc., Securities Litig.)* (recognizing the opinion of counsel, experienced in similar litigation, weighs in favor of approval of the settlement).  Moreover, "[c]ourts are not to substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."  *In re Harnischfeger Indus., Inc., Securities Litig.*, 212 F.R.D. at 409.

The Settlement is the result of hard-fought, arm's-length negotiations between highly experienced and capable counsel with a comprehensive understanding of the relevant facts and law and the relative strengths and weaknesses of the claims and defenses.  Plaintiffs' Counsel have substantial experience litigating stockholder derivative actions.   Moreover, Defendants are represented by skilled derivative litigation practitioners at Katten Muchin Rosenman LLP, a widely

respected corporate defense firm.  The negotiations spanned months and included in-person and virtual mediation sessions, numerous telephonic and videoconference conversations, and emails. Before finalizing an agreement on the Measures, Plaintiffs, through their counsel, considered and evaluated the claims asserted, the likelihood of prevailing on these claims, the risk, expense and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Plaintiffs prevailed at trial and concluded that the Settlement is not only fair, reasonable, and adequate, but also represents a highly favorable resolution of the complex actions.

Because the Settlement was reached only after extensive arm's-length negotiations with a firm understanding of the factual and legal issues presented and the relative strengths and weaknesses of their respective claims and defenses, as described above, counsels' assessments are entitled to great deference.  Further, the Special Litigation Committee, advised by independent counsel, reviewed the proposed Settlement and, in the exercise of disinterested and independent business judgment agreed that the Settlement and its terms provide a substantial benefit to, and are in the best interests of, the Company and its shareholders.  Stip., §§III, IV; *see also Susquehanna*, 84 F.R.D. at 321 ("The corporation's directors, [are] . . . entitled to and should be given considerable respect by this court.").  This factor weighs in favor of preliminary approval.

For the forgoing reasons, the Settlement thus falls within the range of possible approval.

## V.      THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED

The form and manner of the proposed notice constitute the best notice practicable under the circumstances and satisfy the requirements of Fed. R. Civ. P. 23.1, due process, and all applicable governing law.  As set out in the Stipulation, the Settlement Notice will inform Current Inotiv Stockholders of the claims alleged in the Derivative Actions, the terms of the Settlement, and their rights as settlement claims members to object to the Settlement.  The Stipulation sets out

that, within ten (10) business days following entry of the Preliminary Approval Order, Inotiv shall issue notice of the Settlement, which shall consist of: (i) causing the Stipulation and Long-Form Notice to be filed with the SEC, along with an SEC Form 8-K; (ii) publishing the Short-Form Notice one time in *Investor's Business Daily* or www.Investors.com; and (iii) the posting of the SEC Form 8-K with attachments on the "Investor Relations" page of https://www.inotiv.com, the address of which shall be set forth in the Settlement Notice, and shall remain on the Company's website until the judgment becomes Final.  Stip., §V.3.2.

The proposed Settlement Notice describes, *inter alia*: (i) the nature of the litigations, claims asserted, and the Parties' negotiations and reasons for settling; (ii) the terms of the Settlement; (iii) the dismissal and releases of claims; (iv) the amount Plaintiffs' Counsel will seek in fees and expenses and Service Awards to the Plaintiffs; (v) the reasons for the Settlement; (vi) the date of the Settlement Hearing; (vii) the procedure for objecting to the Settlement; and (viii) the procedure for obtaining additional information.  Stip., Exs. B-1, B-2.  The proposed Settlement Notice therefore "reasonably apprises the members of the class of the terms of the settlement and of the options open to those who wish to dissent."  *Susquehanna*, 84 F.R.D. at 324.

The Settlement Notice complies with Fed. R. Civ. P. 23.1 and due process and is similar to those approved in other stockholder derivative cases.  *See, e.g.*, *Hu v. Baker*, No. 4:23-cv-02077-KAW, 2025 WL 2419265, at *9 (N.D. Cal. Aug. 21, 2025) (notice program including: posting notice and stipulation on company's investor relations webpage; publication via *GlobeNewswire* or similar wire service; and SEC filing of either a Form 8-K or 10-Q); *Evans on behalf of United Dev. Funding IV v. Greenlaw*, No. 3:16-cv-635-M, 2018 WL 2197780, at *3 (N.D. Tex. May 14, 2018) (notice of the settlement to be filed with the SEC together with a Form 8-K and to be published in *Investor's Business Daily*); *Bushansky v. Armacost*, No. 12–cv–01597–JST, 2014 WL

2905143, at *6 (N.D. Cal. June 25, 2014) (notice of dismissal plan, requiring a link on defendant's website, a press release to be issued, and a Form 8-K filing); *In re Rambus Inc. Derivative Litig.*, No. C 06–3513 JF (HRL), 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (same). Therefore, the Settlement Notice weighs in favor of preliminary approval as the form and manner of the proposed notice constitute the best notice practicable under the circumstances and satisfy the requirements of Fed. R. Civ. P. 23.1, due process, and all applicable governing law. Fed. R. Civ. P. 23(c)(2); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021).

## VI.    PROPOSED SCHEDULE

Should the Court preliminarily approve the Settlement, Plaintiffs request the following schedule of events:

| EVENT | DEADLINE |
|---|---|
| Notice published in accordance with the Preliminary Approval Order | Within ten (10) business days after the entry of the Preliminary Approval Order. (Prelim. App. Order ¶5). |
| Deadline for Plaintiffs to file their motion for final approval of the Settlement | At least twenty-eight (28) calendar days prior to the Settlement Hearing (Prelim. App. Order ¶14). |
| Deadline for objections to the Settlement | At least twenty-one (21) calendar days before the Settlement Hearing. (Prelim. App. Order ¶11). |
| Deadline for Plaintiffs to file a response to objections to the Settlement, if any | At least seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶14). |
| Settlement Hearing date | At least forty-five (45) calendar days after the deadline for Inotiv to disseminate Notice. |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Settlement is within the range of approval and request that the Court preliminarily approve the Settlement, direct the issuance of the notice of the Settlement, and schedule the Settlement Hearing to consider final approval of the Settlement.

Date: December 24, 2025                          Respectfully submitted,

                                                 By: */s/ Erica L. Stone*
                                                 **THE ROSEN LAW FIRM, P.A.**
                                                 Erica L. Stone (*pro hac vice*)
                                                 Phillip Kim
                                                 275 Madison Avenue, 40th Floor
                                                 New York, NY 10016
                                                 Tel: (212) 686-1060
                                                 Fax: (212) 202-3827
                                                 estone@rosenlegal.com
                                                 philkim@rosenlegal.com

                                                 **GLANCY PRONGAY & MURRAY LLP**
                                                 Benjamin I. Sachs-Michaels
                                                 745 Fifth Avenue, Fifth Floor
                                                 New York, New York 10151
                                                 Telephone: (212) 935-7400
                                                 bsachsmichaels@glancylaw.com

                                                 -and-

                                                 Robert V. Prongay
                                                 Pavithra Rajesh
                                                 1925 Century Park East, Suite 2100
                                                 Los Angeles, California 90067
                                                 Telephone: (310) 201-9150
                                                 rprongay@glancylaw.com
                                                 prajesh@glancylaw.com

                                                 *Co-Lead Counsel for Plaintiffs*

                                                 **WILLIAMS LAW GROUP, LLC**
                                                 Brad A. Catlin, Atty No. 21570-29
                                                 1101 North Delaware Street, Suite 200
                                                 Indianapolis, IN 46202
                                                 Tel: (317) 633-5270
                                                 Fax: (317) 426-3348
                                                 brad@williamsgroup.law

                                                 *Liaison Counsel for Plaintiffs*
                                                 **THE PORTNOY LAW FIRM**
                                                 Lesley F. Portnoy

26

1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional counsel for Plaintiff William Noble Burkhart*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Erica L. Stone*
Erica L. Stone

28